SEXTON, Judge Pro Tem.
hln this trip and fall case, the City of Shreveport (“the City”) appeals the ruling of the trial judge finding it to be liable for a shoulder injury sustained by Plaintiff, Deborah McClelland, when she tripped over an uneven portion of damaged concrete in a sidewalk. The City and Ms. McClelland were each found to be 50 percent at fault. Ms. McClelland was awarded $89,824.40 in damages, subject to a reduction of 50 percent. The City appeals liability only. For the reasons set forth herein, we affirm.

FACTS

At about 9:15 p.m. on October 9, 2005, Ms. McClelland was walking her dogs down the sidewalk of Kimbrough Street in the Anderson Island neighborhood of Shreveport. She had a flexible flashlight around her neck. Both dogs were on leashes, one in front of her and the other walking behind her. Ms. McClelland had lived on Kimbrough Street for 12 years and walked her dogs twice a day down this particular stretch of the sidewalk. She testified that the sidewalks on the street were very bad and she crossed the street during her walks to avoid the worst cracks and breakages in the concrete. According to Ms. McClelland, as she was trying to avoid a bad area in the sidewalk, she stepped on another uneven portion of the sidewalk and fell, dislocating and injuring her shoulder.
Ernest Negrete, the Superintendent of Streets and Drainage for the City, testified that the City relies on citizens to report problems with sidewalks. The City stipulated that it does not have a written policy with regard to inspecting sidewalks and Mr. Negrete confirmed that the City has no program or procedure for inspecting the condition of its sidewalks. 12According to Mr. Negrete, there was no way of know *813 ing exactly what caused the crack in question, but large tree roots and faulty/old concrete contributed to the poor and damaged sidewalks in the City’s older areas such as Anderson Island. He agreed that the specific area where Ms. McClelland fell was in one such area and testified that it was a long-term problem — a problem of which the City was aware. He testified that the City rates the severity of a damaged sidewalk on a scale of 1-3-5 which determines the priority for repair, with 1 being the most severe and 5 being the least. Mr. Negrete placed the defect at issue at a 3. The record reveals that the sidewalk where Ms. McClelland fell was repaired by the City shortly after the accident.
Following the testimony, the trial judge concluded that the City was liable for the accident. The trial judge opined that the City, through Mr. Negrete, acknowledged the long-term nature of the problem and that this particular crack was dangerous enough to warrant a level 3 priority and was repaired promptly after Ms. McClel-land’s fall. On the other hand, the trial judge cited Ms. McClelland’s familiarity with the dangerous nature of the sidewalk and her failure to report the sidewalk to the City. Accordingly, the trial judge concluded that the City and Ms. McClelland were equally at fault, ie., 50 percent of the fault was allocated to the City and 50 percent to Ms. McClelland. The City appeals the finding of liability.

\ .APPLICABLE law

Ms. McClelland’s claim against the City for damages is rooted in La. C.C. Arts. 2317[1] and 2317.1.[2] The specific statute for public entities which parallels article 2317.1 is La. R.S. 9:2800.[3] These provisions establish a duty of care over the property owned by the defendant or property in his custody. Graham v. City of *814 Shreveport, 44,994 (La.App.2d Cir.1/27/10), 81 So.3d 526, writ denied, 10-0440 (La.4/30/10), 34 So.3d 294. Under these provisions, the City, as the owner of a public right of use over the sidewalk, has the duty to ensure the public’s use and possession of the |4sidewalk. However, a municipality is not an insurer of the safety of pedestrians. The City must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. Graham, supra, citing Boyle v. Board of Sup’rs of La. State Univ., 96-1158 (La.1/14/97), 685 So.2d 1080. Moreover, under La. R.S. 9:2800, a City cannot be liable for damages resulting from a defective condition without proof that it had actual or constructive knowledge prior to the occurrence of the particular vice or defect which caused the damage, and that the city had a reasonable opportunity to remedy the defect, but failed to do so. La. R.S. 9:2800(B); Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898; Graham, supra.
The district court’s findings pursuant to La. R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Johnson v. City of Winnfield, 37,939 (La.App.2d Cir.12/10/03), 862 So.2d 433. Under this standard, the appellate court will review the entire record to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). In order to reverse, the appellate court must find that a reasonable basis does not exist for the finding of the trial court and that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).

DISCUSSION

In the case sub judice, the City presents three assignments of error. First, the City submits that the uneven portion of the sidewalk where |5Ms. McClelland fell is a “very minor” irregularity in the concrete and did not create an unreasonable risk of harm. Second, the City challenges the trial judge’s conclusion that the City had constructive knowledge of the defect in the sidewalk. Finally, the City asserts that the trial judge erred in finding that the City failed to take corrective action within a reasonable period of time.

Unreasonable Risk of Harm

The strict liability imposed by Article 2317 requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Boyle, supra. Public entities are not liable for every irregularity in a street or sidewalk. Id. Rather, the determination of whether a thing presents an unreasonable risk of harm should be made “in light of all relevant moral, economic, and social considerations.” Id., citing Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299, quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The City argues that the uneven portion of the sidewalk where Ms. McClelland tripped did not present and unreasonable risk of harm because the crack itself was minimal and open and obvious. Further, the City emphasizes that Ms. McClelland was very familiar with the sidewalk and its defective condition. For these reasons, the City asserts that it should have no liability for the accident. We are not persuaded by the City’s argument.
|fiThe uncontradicted evidence at trial established that the sidewalk was dangerous. Mr. Negrete testified that, because of the “difference of variances on the crack itself,” the defect could have been a danger to someone walking on the side *815 walk. In addition, Mr. Negrete classified the defect as a “3” on the severity/repair priority scale and the defect was repaired promptly after Ms. McClelland’s fall.[4] This court has also viewed the photographs of the crack. Based on all of the testimony and evidence presented, we find a reasonable basis in this record for the trial judge’s conclusion. Unreasonable risk of harm is a factual determination to be made on a case-by-case basis; and, in this case, we do not find manifest or clear error in the trial judge’s finding that the defect created an unreasonable risk of harm.

Constructive Knowledge

Next, the City argues that the trial court erred in finding constructive knowledge. A public entity is not required to conduct inspections of its property and the absence of such inspections does not constitute constructive knowledge of defects therein. Jones v. Hawkins, 98-1259, 98-1288 (La.3/19/99), 731 So.2d 216. Further, the lack of an inspection plan does not equate to a lack of reasonable care in properly maintaining public sidewalks. Id. However, in Graham, swpra, this court recognized |7that the supreme court’s ruling in Jones, supra, did not affect cases where the defect is shown to have existed for such a length of time that the public entity should have discovered the defect with the exercise of reasonable care. In such a case, circumstantially proven constructive notice to a public entity may arise. While this is not the same as a duty to make periodic inspections, which the Jones court rejected, the length of time that an obvious sidewalk defect exists can result in a reasonable conclusion of the municipality’s constructive knowledge.
Here, the trial judge found proof of the City’s constructive knowledge in the testimony of Mr. Negrete. Mr. Negrete testified that, in Anderson Island, the sidewalks are damaged by big tree roots and deteriorating concrete. When asked about the City’s awareness of the deteriorating sidewalks in the area, Mr. Negrete agreed that the problem was not something new to the City. In response to questioning from the trial judge, Mr. Negrete explained that the problem with the sidewalks was “long-term.” He testified that it had been a problem for “many, many, many years.” The City produced no evidence to the contrary. On this record, we find no manifest error in the trial judge’s conclusion that the City had constructive knowledge of the defects in the sidewalk.
Reasonable Opportunity to Repair— Corrective Action
The City argues that the trial judge erred in finding that the City had a reasonable opportunity to repair the defect and failed to take corrective action within a reasonable period of time. We disagree. Again, Mr. Negrete’s testimony established that the problem with the sidewalk had | Sexisted for many years and it was not a problem of which the City was unaware. From the testimony, we surmise that the cracking sidewalks in Anderson Island are *816 a well-known hazard. It was within the trial judge’s discretion to find that the City-had ample opportunity, yet failed, to repair the defective sidewalk at issue — a sidewalk that had admittedly been part of a long-term problem of which the City was constructively aware. We will not disturb the trial judge’s finding on appeal.
Finally, we note that the City did not, alternatively, appeal the trial judge’s apportionment of fault.

CONCLUSION

For the foregoing reasons, the judgment of the trial court finding the City of Shreveport liable for the injury of Deborah McClelland and awarding her $39,824.40 in damages, subject to an allocation of fault reduction of 50 percent, is affirmed. Costs of appeal are assessed to the City of Shreveport in the amount of $262.
AFFIRMED.

. Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

. Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

. La. R.S. 9:2800 dealing with the limitation of liability for public bodies, provides in pertinent part, as follows:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.

. James Holt was the Director of Operational Services, which encompassed the division responsible for sidewalk maintenance and repair, at the time the instant repair was made. Mr. Holt testified by deposition that there was no written policy for sidewalk repair, nor was there any routine procedure for sidewalk inspection. He explained that the work order for the repair of the sidewalk on Kimbrough Street where Ms. McClelland fell arrived on his desk on February 10, 2006, with a completion date of March 12, 2006. Mr. Holt further explained that the job was placed on the "in-house” list to be completed within 90-120 days. The repair was actually done on February 24 and completed on February 27, 2006.